**Nos. 2024-1278, 2024-1354**

# United States Court of Appeals for the Federal Circuit

CPC PATENT TECHNOLOGIES PTY, LTD.,
*Appellant*

v.

APPLE, INC.,
*Appellee*

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2022-00601, IPR2022-00602

## REPLY BRIEF OF APPELLANT
## CPC PATENT TECHNOLOGIES PTY, LTD.

**K&L GATES LLP**

GEORGE C. SUMMERFIELD
JONAH B. HEEMSTRA
70 W. Madison Street, Suite 3300
Chicago, IL 60602
(312) 372-1121
george.summerfield@klgates.com

DARLENE F. GHAVIMI-ALAGHA
2801 Via Fortuna, Suite 650
Austin, Texas 78746
(512) 482-6800

*Attorneys for Appellant*

July 24, 2024

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

I.     INTRODUCTION .................................................................... 1

II.    THE LOWER COURT ERRED IN ITS JUDGMENT THAT THE '208 AND '705 PATENTS ARE OBVIOUS ...................................................... 1

       A.    Dance with the One That Brung Ya ...................................... 1

       B.    Anderson Teaches a Non-biometric Sequence of Finger Presses ............................................................................... 6

       C.    Mathiassen Does Not Teach or Render Obvious the Use of a Biometric Signal Series in an Enrollment Process ........................... 10

CONCLUSION ................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Henny Penny Corp. v. Frymaster LLC*,
  938 F. 3d 1324 (Fed. Cir. 2019) ............................................................5

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
  821 F.3d 1359 (Fed. Cir. 2016) ............................................................5

*Microsoft Corp. v. Biscotti, Inc.*,
  878 F.3d 1052 (Fed. Cir. 2017) ............................................................6

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ............................................................6

## I.     INTRODUCTION

The issues in this appeal have now effectively been distilled to one – whether the combination of Mathiassen's enrollment process with the non-biometric series of finger presses of Anderson renders obvious claims requiring a series of ***biometric*** signal entries.  The inescapable answer is no.  As a subsidiary matter, any belated effort by Apple to supplement Mathiassen's teachings with something other than Anderson should be rejected.  Finally, to the extent Apple is allowed to rely on the teachings of Mathiassen alone, despite not having urged that reference as a standalone invalidity challenge, such reference also fails to teach a series of ***biometric*** signal entries.  As such, the PTAB's judgment that the challenged claims are invalid should be reversed.

## II.     THE LOWER COURT ERRED IN ITS JUDGMENT THAT THE '208 AND '705 PATENTS ARE OBVIOUS

### A.     *Dance with the One That Brung Ya*

Apple, on appeal, attempts to change fundamentally the theory upon which it originally urged the invalidity of the challenged claims in the proceeding below.  Central to this appeal, and indeed to the entire proceeding below, are the "receive," "map," and "populate" limitations of the challenged claims (referenced as elements a(1)-a(4) in Apple's original petitions), as represented by claim 1 of the '705 Patent:

> ***receive*** a series of entries of the biometric signal, said series being characterised according to at least one of the number of said entries and a duration of each said entry;

*map* said series into an instruction; and

*populate* the data base according to the instruction.

Appx166, 16:15-20 (emphasis added).

It should now be undisputed that these limitations pertain to the process of enrolling a new user of the claimed access system.   *See* Blue Br. at 27.  The PTAB recognized as much (Appx38; Appx97), and Apple tacitly admits as much in attempting to apply the prior art's teachings to that process (*see* Red Br. at 32-41).[1]

To satisfy the "populate" limitation, Apple could not have been clearer as to its original challenge basis, as this passage from the '705 Patent petition illustrates:

> Mathiassen does not directly teach enrollment is initiated via a series of fingerprint entries but rather enrollment is initiated via the administrator's fingerprint. However, as discussed for Claim 1(d2), Mathiassen teaches instructing a particular command with a series of fingerprint representations, and Anderson teaches enabling a requested function via a series of fingerprint pulses of varying durations. *A POSITA would have found it obvious and been motivated to modify Mathiassen's disclosed enrollment process initiated by an administrator's fingerprint to instead initiate enrollment with a series of fingerprint presses of particular durations, as taught by Anderson*.

---

[1] Apple, for the first time on appeal, argues that "CPC's entire 'enrollment process' argument is divorced from any actual claim requirement."   Red Br. at 40-41. Ironically, however, Apple argues that it is CPC that is subject to waiver. *See id.*  In fact, as the PTAB noted, CPC maintained that "Mathiassen has no teaching that either the 'predefined sets of finger movement sequences' or the 'command table' constitute a series of received biometric signal entries that are mapped into an instruction used to populate the database *as part of the enrollment process*."   *See* Appx60; Appx121 (emphasis added).

Appx3249 (emphasis added) (internal citations omitted); *see also* Appx215.

There are a couple of key takeaways from this passage.  First, Apple admits that, in Mathiassen, there is no teaching of a fingerprint *series* used in an enrollment process.  Secondly, Apple did not propose importing any of Mathiassen's authentication commands (*e.g.*, "open door" (*see* Appx60; Appx122)) for use in an enrollment process.  Rather, Apple proposed a simple substitution – Anderson's finger presses[2] are to be swapped in for the single fingerprint used in Mathiassen's enrollment process.

As recently as in its reply below, Apple relied on this mere substitution to purportedly arrive at the claimed inventions, as the following table from Apple's reply brief, and replicated in the Final Written Decision for the '705 Patent, demonstrates:

---

[2] Apple erroneously refers to these as "***fingerprint*** presses," a term never used in Anderson.

3

| 1(d1)-1(d3) | Petition's Mapping |
|---|---|
| Receive a series of entries of the biometric signal, said series being characterized according to at least one of the number of said entries and a duration of each said entry | *Mathiassen's* processor receives information indicating a series of consecutive fingerprint representations i.e., a series of touches in a touch/no-touch sequence characterized according to the number of touches and duration of each touch (per *Anderson*). |
| Map said series into an instruction | *Mathiassen* translates the series of touches into a command using *Mathiassen's* command table. |
| Populate the data base according to the instruction | *Mathiassen+Anderson* renders obvious generating and storing master minutiae tables for a newly enrolled user according to the instruction to enroll commanded by the series of fingerprint representations in touch/no-touch sequence of particular durations. |

Appx121 (highlighting added).

Again, the clear import of this table is that Apple proposed simply exchanging Mathiassen's single fingerprint enrollment process for Anderson's "touch/no-touch sequence." On appeal, however, Apple now seems to suggest that modifying Mathiassen's teachings with ***any*** "received series of fingerprint representations" for enrollment purposes would be fair game. *See, e.g.*, Red Br. at 34 ("The Board agreed with Apple that it would have been obvious 'to include an enrollment command in the command table' so that ***a received series of fingerprint representations*** are mapped to the administrative code for enrolling a new user." (emphasis added)).

Through its characterization of the Final Written Decisions, Apple is attempting to bootstrap a new invalidity theory using a finding that the PTAB ***did not make***. For the '705 Patent, the portion of the Final Written decision cited by

Apple includes the table from Apple's reply brief specifying "a series of touches in a touch/no-touch sequence characterized according to the number of touches and duration of each touch (*per Anderson*)," as opposed to some generic series of fingerprints.  Appx121 (emphasis added).  For the '208 Patent, the Final Written Decision says nothing at all regarding the prior art receiving "a series of fingerprint representations" **as part of an enrollment process**.  *See* Appx60-61.  At most, that decision, in response to CPC's challenge regarding populating the database "as part of the enrollment process," merely noted Apple's assertion that "'Mathiassen teaches receiving entries of a series of fingerprints' and that 'Anderson teaches receiving a series of fingerprint pressure pulses of varying duration.'"  *See* Appx61.

Nowhere did the PTAB credit a challenge ground wherein Mathiassen's teachings were modified by a generic "series of fingerprint representations," as opposed to Anderson's specific touch/no-touch sequence of finger presses – undoubtedly because Apple never raised such a challenge below.

Apple's attempt to cobble such a challenge together now is prohibited, as "the expedited nature of IPR proceedings" precludes raising "'an entirely new rationale' for why a claim would have been obvious" after a petition has been filed.  *See Henny Penny Corp. v. Frymaster LLC*, 938 F. 3d 1324, 1330-31 (Fed. Cir. 2019) (*quoting Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016)).  And, as Apple itself notes, arguments not raised before the PTAB are waived

5

on appeal. Red Br. at 25 (*citing SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)); *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1075 (Fed. Cir. 2017). Apple is stuck with the single challenge ground on which it initiated the proceeding below.[3]

The likely reason for Apple attempting to distance itself from its original challenge ground is that "receive," "map," and "populate" all implicate the claimed "series of entries of [a] *biometric* signal." This begs the question as to whether Anderson's touch/no-touch sequence of finger presses is "biometric." If it is not, then modifying Mathiassen's teachings with that sequence does not result in the inventions claimed in the challenged patents. As discussed hereafter, and as Apple likely realizes, that sequence is decidedly *not* biometric.

## B.     *Anderson Teaches a Non-biometric Sequence of Finger Presses*

CPC explained in great detail in its original briefing that the finger presses taught in Anderson are non-biometric. *See, e.g.*, Blue Br. at 12-14. A key piece of evidence in that discussion is the agreement by both parties' experts that such finger presses are "knowledge-based," *i.e.*, non-biometric. *See id.* at 14. The PTAB even acknowledged that, if finger presses are "based on a pattern," such presses "would

---

[3] In what is perhaps an effort to disguise its attempt to vary from its original challenge ground, Apple tips its hat to that challenge ground, pointing to its expert's opinion that "relevant artisans 'would have found it obvious and been motivated to modify Mathiassen's enrollment procedure to be initiated with a series of fingerprint presses of particular durations, as taught by Anderson.'" Red Br. at 35.

be simply a 'knowledge-based' security measure, based on a pattern rather than based on a unique physical attribute of the user." Appx40; Appx99.

Apple responds that "Dr. Sears simply acknowledged that 'the amount of pressure' and whether contact is for a 'short' or 'long' time may be knowledge based. He never agreed that including such knowledge-based features, which CPC's own claims recite, precludes Anderson from disclosing a biometric signal series." Red Br. at 30. But the pressure and length of Anderson's finger presses are their very essence. *See* Appx1312, Abstract ("A method for inputting an access code *via temporal variations in the amount of pressure* applied to a touch interface is disclosed." (emphasis added)). There simply is nothing else to them. In other words, if "pressure" and "time" variability to finger presses are knowledge-based, then the finger presses themselves are knowledge-based.

Further, while Apple is correct that "including such knowledge-based features" does not "preclude[] Anderson from disclosing a biometric signal series," Apple must still point out where that biometric signal series is taught in Anderson. Apple reverts back to Anderson's teachings that, in an optional embodiment, one can capture a fingerprint image, *too*. *See, e.g.*, Red Br. at 30-31. CPC addressed that issue in its original briefing. Blue Br. at 13-15. It is, however, worth reiterating that Anderson teaches "'collecting *an* image of the user's fingerprint as the pressure access code is entered,' as opposed to multiple images," which would nominally be

7

required for "a *series* of fingerprint signals." *See id.* at 15 (*citing* Appx1324, 7:6-7 (emphasis added)).

In any event, even if Anderson taught collecting more than just a single fingerprint image, that collection capability is ***not*** what Apple proposed importing into Mathiassen, as the PTAB noted in its Final Written Decisions:

> As explained by Petitioner,
>
> There would have been a reasonable expectation of success in modifying Mathiassen's control 20, because it contains software and hardware for detecting directional movement and touch/no touch. Mathiassen's sensor 5 already detects a finger press because it receives fingerprint representations. ***The modification therefore only requires simple programming techniques (e.g., modifying the translation program to count the number and duration of "touch" or "no touch") that were within a POSITA's expertise***.

Appx57; Appx116 (emphasis added) (citations omitted).

> Anderson's teachings bolster this notion of simplicity:
>
> A known code key (*e.g.*, Morse code) or a memory nemonic [*sic*] (*e.g.*, the melody of a favorite song) may be utilized to aid the user in selecting, remembering, and entering the access code. Further, by using a code key such as Morse code, a conventional alphanumeric password previously entered via a keyboard or keypad may be converted into a pressure password consisting of a series of long and short pressure applications for use with the present invention.

Appx1324, 7:40-47.

Whether Anderson separately taught collecting fingerprint data or not, Apple relied upon the simplicity of counting the number and duration of Anderson's finger presses to justify modifying Mathiassen with the teachings of Anderson. Apple

*cannot* be contending that something amenable to simple counting is a biometric signal.

Apple references the PTAB's curious statement that, "[a]s we explained above in our discussion of Anderson, there can be no reasonable dispute that Anderson discloses input *biometric* signals that vary in number and duration." Appx57; Appx116 (emphasis added). That "discussion" was as follows:

> Anderson discloses a system where the touch interface may sense only 'temporal applications of pressure,' relying on timing of the pressure applications for entry of the access code. Alternately, as shown in FIG. 4B, the touch interface may sense both temporal applications of pressure and variations in pressure magnitude or intensity. Thus, the access code would be entered as a series of alternating short and long pressure applications that vary both in duration and magnitude.

Appx44-45; Appx103-104 (internal citations omitted).

The PTAB never explains how applications of pressure varying in time, magnitude, or intensity are, in any way, "biometric." In fact, as noted above, the PTAB acknowledges that, as they are pattern-based, they are not "biometric." *See* Appx40; Appx99.

The PTAB also says that, in the context of the Mathiassen/Anderson combination, "Mathiassen's fingerprint sensor receives this series of entries of the biometric signal," *i.e.*, Anderson's "series of fingerprint pressure pulses of varying duration." Appx60-61 (discussing Apple's mapping of the prior art to claim 1 of the

'705 Patent); *see also* Appx121.  To begin with, Anderson never refers to a "series

of *fingerprint* pressure pulses."  In fact, Anderson teaches:

> A known code key (*e.g.*, Morse code) or a memory nemonic [*sic*] (*e.g.*, the melody of a favorite song) may be utilized to aid the user in selecting, remembering, and entering the access code. Further, by using a code key such as Morse code, a conventional alphanumeric password previously entered via a keyboard or keypad may be converted into a pressure password consisting of a series of long and short pressure applications for use with the present invention.

Appx1324, 7:40-47.

The upshot of all of this is that Apple has proposed replacing in one reference

a single fingerprint used in an enrollment process with a non-biometric series of

finger presses from another reference.  As all of the challenged claims call for "a

series of entries of [a] *biometric* signal" used in an enrollment process, Apple's

proposed replacement does not render such claims obvious.

### C.    *Mathiassen Does Not Teach or Render Obvious the Use of a Biometric Signal Series in an Enrollment Process*

In case Apple is allowed belatedly to convert its single challenge ground

involving three references into what amounts to a single reference challenge based

upon Mathiassen alone, Apple must have proven below, and the PTAB must have

found, that Mathiassen alone teaches a series of entries of "[a] biometric signal" used

in an enrollment process. Neither thing happened.

The over-arching theme to Apple's discussion of Mathiassen is that, because

the PTAB called out the use of Mathiassen's fingerprint sensor, it also found that

"Mathiassen alone teaches biometric input" of the type claimed in the challenged patents. *See* Red Br. at 15-17. In Apple's referenced portion of the Final Written Decisions, the PTAB replicated the following passage from Mathiassen:

> As an additional safety feature the portable or embedded device could be equipped with means for the input of code or commands. This is achieved by defining a fingerprint storage segment in non-volatile memory (7, 7A or 7E) where the device may store a series of consecutive fingerprint representations generated by the fingerprint sensor signal capturing and preprocessing block (5C). ***Movement analyzing means, in the form of a hardware or a software movement analyzing program module analyzes the obtained series of fingerprint representations to obtain a measure of the omni-directional finger movements across the sensor in two dimensions. Translation means in the form of a hardware or a software translation program module analyzes and categorizes the omni-directional finger movements across the fingerprint sensor according to predefined sets of finger movement sequences including directional and touch/no-touch finger movement sequences. A command table is used to translate the categorized finger movements into control signals whereby the translating means generates control signal for controlling the device, e.g. the stand-alone appliance, in response to the finger movements on the sensor***.

Appx59 (emphasis in original) (citation omitted); *see also* Appx120.

From this passage, the PTAB concluded that "[t]here can be no reasonable dispute that Mathiassen discloses a computer implemented software translation program for converting ***finger movements*** into control signals." Appx59; Appx120 (emphasis added). This may be true but is nonetheless irrelevant to whether those finger movements are biometric.

Apple attempts nonetheless to salvage this conclusion for its benefit, claiming that the PTAB found Mathiassen as teaching "'us[ing] a biometric sensor' to 'detect

11

the biometric part of the input signal' *generated from finger movements*."  Red Br. at 21 (emphasis added).  That is decidedly *not* what the PTAB found.  Rather, because Mathiassen "uses a biometric sensor as the input device, it will detect the biometric part of the input signal, *while also* sensing the number and duration of inputs." Appx58; Appx117 (emphasis added).  There is nothing in Mathiassen that teaches correlating biometric data to finger *movement.*

Apple similarly contends that "Mathiassen detects finger movements by detecting 'a series of fingerprint representations that have been captured by the' fingerprint sensor."  Red Br. at 23.  The quoted portions of the PTAB's Final Written Decisions, however, say no such thing.  In fact, the closest the PTAB comes is that Mathiassen (in the context of its combination with Anderson), using the biometric sensor as the input device, "will detect the biometric part of the input signal, *while also* [*i.e.*, not "by"] sensing the number and duration of inputs."  Appx58; Appx117 (emphasis added).

In its original briefing, CPC cited separate *inter partes* review proceedings finding the same claims of the same patents patentable over prior art that taught entering non-biometric signals through a biometric sensor.  Blue Br. at 23.  The relevance of those decisions is to introduce the presumably non-controversial proposition that, simply because one enters a signal though something labeled a "fingerprint sensor" does not necessarily equate to the entry of a biometric signal.

As the *same* panel noted, the sensor in the art at issue therein served a dual purpose, only one of which was to capture biometric signals. *Id.* at 24. The PTAB characterized the duality in those proceedings as: "(i) reading fingerprints for authentication and access control and (ii) as a means of issuing commands/instructions through a series of 'taps' of varying durations." *See id.* While the former function involves biometric signals, the latter function does not. *See* Appx4385-4386; Appx4295.

Similarly, as discussed above, Mathiassen teaches entering a "fingerprint" (rather than a "series") as part of an enrollment process. *See* Appx1294, ¶ [0131] ("When the next user is to be enrolled, the system administrator will have to open this procedure by authenticating himself *by his fingerprint*." (emphasis added)); *see also* Appx3248 (*citing* Appx1294, ¶ [0131] (Apple's admission that Mathiassen does not teach a "series" as part of an enrollment process)).

Separately, Mathiassen taught "converting finger movements into *control* signals." Blue Br. at 23 (*citing* Appx59; Appx120) (emphasis added). This separate function in Mathiassen requires a "software translation program" in addition to the fingerprint sensor, as Apple's expert acknowledged. *Id.* (*citing* Appx3097-3098, 51:4-52:6). So, just as in the other *inter partes* review proceedings dealing with these claims, the prior art here teaches biometric and non-biometric signals being both entered using something called a "fingerprint sensor." Perhaps Apple, quoting

the PTAB, said it best in the context of the Mathiassen/Anderson combination – "[as] the Board put it, the system 'will detect the biometric part of the input signal, ***while also sensing the number and duration of inputs***.'"[4]   Red Br. at 19 (*citing* Appx58; Appx117) (emphasis added).

Apple argues that *vacatur* of those IPR decisions was central to the issues here.  Red Br. at 27-28.  According to Apple, "CPC is now belatedly trying to read into the challenged claims additional requirements from the ASSA ABLOY Board decisions to distinguish its claims from the prior art here."  *Id*. at 28.  That is simply wrong.  CPC cites these decisions solely to highlight the distinction between a biometric and non-biometric signal, and to reiterate that both can be entered using a fingerprint sensor – the central issues to whether Mathiassen actually teaches the claimed series of biometric signal entries.  ***How*** those signals are used – enrollment versus something else – is discussed in the previous section, but that inquiry is independent of whether the signals themselves are biometric.

---

[4] Apple makes the argument that "purpose" has no place in this analysis.  Red Br. at 24-26.  Specifically, according to Apple, "CPC's arguments about whether 'Mathiassen's movement analyzing means' are 'concerned with finger movement, as opposed to the fingerprints themselves,' thus have no bearing on the disputed limitation."  Red Br. at 25.  This is a surprising statement, given that Mathiassen's purportedly intertwining finger movement and fingerprints is ***the*** centerpiece of Apple's challenge as to that reference.  If the two are not intertwined, *i.e.*, the purpose of the fingerprint sensor in Mathiassen collects fingerprint images, on the one hand, while, along with movement-analyzing means, analyzing movement data, then that centerpiece disappears.

Apple characterizes as a PTAB finding that "Mathiassen 'teaches or renders obvious administrative code directing' its authentication system 'to store fingerprint representations,' *i.e.*, 'biometric signatures,' 'in master *minutiae* tables (*i.e.*, database of biometric signatures)' as part of 'enrolling a new user.'" Red Br. at 34 (citations omitted) (emphasis added).  It is worth noting at the outset that, in the passages to which Apple refers, the PTAB was simply reciting what Apple had asserted (*see* Appx60; Appx120-121).

In any event, there is no teaching that Mathiassen's "administrative code" comprised a biometric signal series.  In fact, as noted above, Apple conceded from the outset that "Mathiassen does not directly teach enrollment is initiated via a series of fingerprint entries but rather enrollment is initiated via the administrator's fingerprint."  Appx3249; Appx215.

Apple also characterizes as a "finding" the PTAB's supposed recognition that "the prior art's teachings would have led ordinarily skilled artisans to translate sequences of finger movements received by a biometric sensor into various commands, including commands for use in enrolling a new user." Red Br. at 34.  In fact, the following is the extent of the PTAB's reasoning on this point:

> It is clear that Mathiassen's fingerprint sensor receives this series of entries of the biometric signal, similar to the '705 patent's code entry module 103 containing a biometric sensor 121 that receives a user's fingerprint. Mathiassen's processor then translates the series of fingerprints received by its biometric sensor into a command, such as 'open door' command, for authenticating the user to access the car doors.

Appx60; Appx122.

The PTAB said nothing in this cited passage about the use of "a series of entries of the biometric signal" in an enrollment process.  And, there can be little dispute that an "open door" command occurs post-enrollment.

Nonetheless, Apple defends the PTAB's decision because, "[e]ven if the Board had not provided this express reasoning, the Court may affirm so long as it can 'reasonably discern that [the Board] followed a proper path.'"  Red Br. at 37.  That proper path, according to Apple, is "pointing to Mathiassen's teachings of (1) a 'series of entries of the biometric signal' that are (2) translated 'into a command' where (3) one such command is for use in an enrollment process that may itself involve entering additional biometric input."  *Id.* at 38.  As explained above, modifying the fingerprint entry taught in Mathiassen to initiate an enrollment process with the non-biometric finger presses taught in Anderson does not arrive at the claimed invention.  Further, Apple has never identified any other "biometric input" for use in Mathiassen's enrollment process.  Certainly, even if Apple could identify such input, it would not be amenable to the "simple programming techniques" merely requiring counting "the number and duration of 'touch' or 'no touch,'" which provided the cited impetus for modifying Mathiassen's teachings with those of Anderson.  *See* Appx57; Appx116.

In sum, assuming the issue is even relevant to this appeal, Apple did not put forth evidence, and the PTAB did not find, that Mathiassen teaches or renders obvious the use of a biometric signal series in an enrollment process.

## <u>CONCLUSION</u>

For the foregoing reasons, the PTAB's decision that the challenged claims of the '208 and '705 Patents are obvious should be reversed.

Dated: July 24, 2024

Respectfully submitted,

By:   /s/ George C. Summerfield
GEORGE C. SUMMERFIELD
george.summerfield@klgates.com
JONAH B. HEEMSTRA
jonah.heemstra@klgates.com
K&L GATES LLP
70 West Madison Street
Chicago, Illinois  60602-4207
(312) 372-1121

DARLENE F. GHAVIMI-ALAGHA
darlene.ghavimi@klgates.com
K&L GATES LLP
2801 Via Fortuna, Suite 650
Austin, Texas 78746
(512) 482-6800

*ATTORNEYS FOR APPELLANT*
*CPC PATENT TECHNOLOGIES PTY, LTD.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1278, 24-1354

**Short Case Caption:** CPC Patent Technologies Pty Ltd. v. Apple Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  3,870  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/24/2024

Signature: /s/ George Summerfield

Name: George Summerfield